UNITED STATES DISTRICT COURT WESTERN DISTRICT OF WASHINGTON AT TACOMA

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

JOSE BENJAMIN GIRON-PADILLA,
    Defendant.

Case No. MJ20-05218

DETENTION ORDER

THE COURT, having conducted a detention hearing pursuant to 18 U.S.C. Section 3142, finds that no condition or combination of conditions which defendant can meet will reasonably assure the safety of any other person or the community; nor are there conditions that would reasonably assure the defendant would be less likely to flee or fail to appear for court proceedings.

The defendant is charged with Illegal Reentry After Deportation -- under 8 U.S.C. Section 1326(a). Complaint, Dkt. 1. The government filed a motion for detention, alleging risk of flight, risk of non-appearance, and risk of dangerousness to others and to the community. Dkt. 4 at 2.

The Court considered the documents in the record, the information presented by counsel and arguments presented at the hearing, and the pretrial services report. The Court will not consider either the probability of removal due to immigration proceedings, or whether the defendant will be subject to a separate immigration detention in the custody of the United States Government pursuant to an immigration detainer. *United States v. Diaz-Hernandez,* 943 F.3d 1196, 1199 (9th Cir. 2019); *United States v. Santos-Flores,* 794 F.3d 1088, 1092 (9th Cir. 2015).

The government met its burden of proving by a preponderance of the evidence that the defendant presents a significant risk of flight, or failure to appear, based on the defendant's history of repeated criminal conduct concerning evading the immigration

1

1  laws of the United States, he has no current employment or other financial ties to
2  Washington State, and he has previously had a bench warrant issued by a state court
3  for failure to appear. Dkt. 10, Pretrial Services Report (9-17-2020) at 2-3.
4        The Court also finds the government met its burden of proving by clear and
5  convincing evidence that the defendant presents a significant risk of danger to others or
6  to the community. The defendant's criminal history shows convictions involving harmful
7  physical conduct, including two convictions for assault, and one conviction for robbery.
8  Dkt. 10, Pretrial Services Report at 2-3. He also has convictions for crimes involving
9  behavior that is surreptitious or fraudulent -- residential burglary (Clark County Superior
10 Court conviction in 2017, with a sentence of 43 months custody), and identity theft
11 (2017 conviction in Clark County Superior Court, with a sentence of 22 months of
12 custody and 12 months community custody). *Id.*
13       Even with conditions by which the defendant's whereabouts could potentially be
14 monitored, the Court finds that there are no conditions of release that would effectively
15 mitigate the potential for failure to appear, flight to avoid prosecution, or repeated
16 behavior of evading the United States immigration laws; and his criminal history of
17 repeated assault convictions, a robbery, a residential burglary, and identity theft -- also
18 shows that he has not demonstrated law abiding behavior in the community. All of this
19 criminal history convinces the Court that his threat to the community continues and his
20 behavior cannot be successfully controlled.
21       During the hearing, the defense proposed that Mr.Giron-Padilla should be
22 released and would be held at an immigration detention center, on an immigration
23 detainer. The Court cannot consider this a viable release plan under the Bail Reform
24 Act. *See United States v. Diaz-Hernandez,* 943 F.3d 1196, 1199 (9th Cir. 2019); *United States v. Santos-Flores,* 794 F.3d 1088, 1092 (9th Cir. 2015). The defendant also

1  argued that he must be released because is concerned that he will be exposed to
2  individuals with COVID-19 disease while he is detained at the SeaTac Federal
3  Detention Center (FDC). Although the Bail Reform Act provides that the Court should
4  give consideration for a defendant's "physical and mental health" in determining release,
5  the defendant has not shown that he is especially susceptible to contracting COVID-19,
6  or that he has co-morbid conditions that would cause him, if he did contract the virus, to
7  suffer more than others who have the COVID-19 disease.
8       The Court is aware of the impact that COVID-19 is having on the Western District
9  of Washington community locally and on the national and global community. The
10 situation is changing; according to the Bureau of Prisons' website, there have been
11 reported cases of inmates and staff at the Federal Detention Center at SeaTac, within
12 the Bureau of Prisons ("BOP") system, who have tested positive for the COVID-19 virus.
13 *See* https://www.bop.gov/coronavirus/index.jsp.) *See King v. County of Los Angeles,*
14 885 F.3d 548, 555 (9th Cir. 2018) ("To describe the conditions at Coalinga [State
15 Hospital], we take judicial notice of the undisputed and publicly available information
16 displayed on government websites."). Yet, a person who is arrested and evaluated for
17 release or detention under the Bail Reform Act cannot reasonably rely on the argument
18 that detention should be off the table because there are individuals with COVID-19
19 positive test results at the FDC. As a practical matter, the fluctuating FDC COVID-19
20 rates – as they are also fluctuating in the Western District of Washington community --
21 would be a fluctuating factor based on testing data and statistics that are always
22 changing, with plateaus, peaks, and valleys. *See generally,*
23 https://www.coronavirus.wa.govwhat-you-need-know/covid-19-risk-assessment-
24 dashboard

.When the rates of infection in the detention facility (and presumably the infection rates in the residential re-entry housing centers, and in other placement options, would also need to be considered) are high (to determine whether a rate is "high" or not, the infection rate would need to be considered in the context of some independent objective standards) the defense is apparently arguing that the infection rate overshadows all of the other Bail Reform Act criteria, and essentially requires release during the pandemic. *See e.g., United States v. Carmona,* No. 20cr00059-LAB, 2020 WL 2512199 (S.D. Cal. May 15, 2020) ("To be sure, the prevalence of the COVID-19 virus outbreak in detention facilities informs the balancing of relevant § 3142 release factors. But that single factor does not *control* the release decision.") The defense has not presented legal authority for the proposition that COVID-19 rates at the FDC compel the conclusion that defendant must be released, and the Court is not persuaded by this argument.

The Court finds: The government met its burden of proving by a preponderance of the evidence that the defendant presents a significant risk of failure to appear. The government also met its burden of proving by clear and convincing evidence that the defendant presents a significant risk of danger to others and to the community, and there are no condition or combination of conditions which defendant can meet that will reasonably assure the safety of any other person and the community, or the appearance of the defendant.

This finding is based on:

1) the nature and circumstances of the offense(s) charged,

2) the weight of the evidence against the person;

3) the history and characteristics of the person;

4) criminal history;

5) history of failure to appear; and

4

6) the nature and seriousness of the danger release would impose to any person or the community, including a history of repeated violent assaults; residential burglary, robbery, and identity theft.

*Order of Detention*

- The defendant shall be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.
- The defendant shall be afforded reasonable opportunity for private consultation with counsel.
- The defendant shall on order of a court of the United States or on request of an attorney for the Government, be delivered to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

Dated this 18th day of September 2020.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge